UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Valerie LeMaster,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No. 20-cv-0600 (SRN/DTS)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Valerie LeMaster, P.O. Box No. 138, Lonsdale, MN 55046, Pro Se.

Ann M. Bildtsen, Assistant United States Attorney, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant United States of America's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [Doc. No. 10]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

**I.   BACKGROUND**

In 2015, the Consumer Financial Protection Bureau ("CFPB") and Federal Trade Commission ("FTC") brought a civil enforcement action against Green Tree Servicing, LLC, a mortgage servicing business ("Green Tree"), alleging numerous violations of consumer financial laws, among others. Shortly after filing the action, the parties resolved the dispute by way of a "Stipulated Order for Permanent Injunction and Monetary

1

Judgment" ("Consent Order"), which, *inter alia*, required Green Tree to pay the CFPB certain redress funds. Plaintiff Valerie LeMaster brings this action under the Federal Tort Claims Act ("FTCA") alleging that she was a victim of Green Tree's activities as a mortgage servicer that led to the enforcement action, that the CFPB owes her a fiduciary duty with respect to these redress funds, and that it breached its duty by failing to comply with the terms of the Consent Order.

In response, the United States contends that the CFPB owes LeMaster no such duty and that, in administering the Consent Order and overseeing the distribution of redress funds, it was performing a discretionary function. As such, the United States contends, the activities LeMaster challenges in this action fit within the discretionary function exception to the FTCA's waiver of sovereign immunity, depriving the Court of subject matter jurisdiction over her claim. For this reason, the United States moves to dismiss LeMaster's claim under Rule 12(b)(1). Alternatively, the United States moves to dismiss her claim under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### A. LeMaster's Home

In January 2000, LeMaster purchased her family home. (Compl. [Doc. No. 1] ¶ 14.) On May 1, 2013, Green Tree purchased the servicing rights to her mortgage from Bank of America. (*Id.* ¶¶ 20-21.) Subsequently, LeMaster alleges that Green Tree engaged in a variety of unlawful conduct, such as failing to honor a loan modification she obtained

2

through Bank of America. (*See id.* ¶¶ 18-41.) On January 7, 2014, LeMaster's home was sold at a sheriff's foreclosure sale. (*Id.* ¶¶ 32, 36, 39.)[1]

### B. The 2015 Enforcement Action and Consent Order

On April 21, 2015, the FTC and CFPB brought a civil enforcement action against Green Tree, alleging violations of various consumer financial laws involving its mortgage-servicing business. (*See* Compl., Ex. 2 at 1-43.) The parties resolved the action through a Consent Order. On April 23, 2015, this Court entered the Consent Order, executed by the FTC, CFPB, and Green Tree. (*See id.*, Ex. 2 at 44-110.) Under the Consent Order, Green Tree agreed to: (1) pay $48 million to the CFPB for consumer redress; (2) pay $15 million as a civil monetary penalty; and (3) abide by a detailed framework of injunctive provisions. (*See id.* §§ I, II, V-XX, at 52-55, 63-107.) With respect to the redress funds, the Consent Order provides that:

> All money paid to the [CFPB] pursuant to this Section shall be deposited into a fund or funds administered by the [CFPB] or its agent in accordance with applicable statutes and regulations to be used for consumer redress, including but not limited to refund of moneys, restitution, or other monetary relief, and for any attendant expenses for the administration of such redress.

(*Id.* § I(C), at 53.) The Consent Order further provides that:

> If the [CFPB], in consultation with the [FTC], decides that redress to consumers is wholly or partially impracticable or otherwise inappropriate or funds remain after redress is completed, the [CFPB] may apply any remaining money for such other relief (including consumer information remedies) as it determines to be reasonably related to [Green Tree's] practices alleged in the Complaint. Any funds not used for such relief are to

---

[1] Years later, in August 2018, LeMaster and her family were evicted from their home. (*Id.* ¶ 41.)

> be deposited to the U.S. Treasury as disgorgement. [Green Tree] has no right to challenge any actions the [CFPB], the [FTC], or their representatives may take pursuant to this Paragraph.

(*Id.* § I(D), at 53.)

Moreover, the Consent Order imposes certain requirements on Green Tree regarding consumer information. Specifically, it "permanently restrained and enjoined" Green Tree "from failing to provide sufficient consumer information to enable the [CFPB] to efficiently administer consumer redress." (*Id.* § XV, at 94.) Further, it provides that, "[i]f a representative of the [CFPB] requests in writing any information relating to redress, [Green Tree] must provide it, in the form prescribed by the [CFPB], within 21 days." (*Id.*) This Section does not require the CFPB to request any information from Green Tree. (*See id.*)

The Consent Order also imposes certain compliance monitoring requirements on Green Tree. Specifically, it requires Green Tree to provide compliance reports and certain discovery if the CFPB or FTC requests them. (*Id.* § XX, at 105-06.) It does not require the CFPB to request any compliance reports or discovery. (*See id.*) Further, the Consent Order preserves consumers' rights to sue Green Tree. (*Id.* § I(E), at 53-54.) Finally, this Court retained jurisdiction over this matter "for purposes of construction, modification, and enforcement of this Order." (*Id.* § XXI, at 107.)

In this action, LeMaster only alleges that she is entitled to redress funds. (Compl. ¶¶ 89-109.) She does not allege she is entitled to civil monetary penalty funds. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") [Doc. No. 22] at 5; *see* Compl. ¶¶ 89-109.) According to LeMaster, the CFPB received the $48,000,000 in redress funds on April

4

30, 2015, and deposited them into a "Legal or Equitable Fund" at the Department of Treasury. (*Id.* ¶¶ 47-48.) She alleges that the CFPB has admitted that these funds are "fiduciary funds." (*Id.* ¶ 50.)

### C. LeMaster's Efforts to Obtain Redress Funds

LeMaster alleges that the CFPB contracted with Epiq Services, Inc. ("Epiq") to disburse the redress funds and that such disbursals began on September 1, 2016. (*Id.* ¶ 51.) Indeed, LeMaster points to a webpage from the CFPB's website providing that the CFPB "contracted with Epiq … to administer payments for this case and to answer questions from consumers on [its] behalf," and that consumers for whom Green Tree serviced mortgages "may be able to receive compensation when funds are distributed." (*Id.*, Ex. 3 at 59.)

On May 4, 2015, LeMaster alleges she filed a formal complaint with the CFPB explaining why she thought she was entitled to redress funds. (Compl. ¶ 52.) She alleges she never received a response regarding this complaint, although a CFPB representative repeatedly told her that its investigation "was in progress." (*Id.* ¶¶ 53-56.) LeMaster also attempted to contact Epiq, but Epiq told her that it could not consider her for redress funds because Green Tree did not identify her as having been served during the qualifying period. (*Id.* ¶ 57.)

On March 5, 2017, LeMaster filed another formal complaint with the CFPB. (*Id.* ¶¶ 58-59.) She alleges that the CFPB failed to respond but told her over the phone that its investigation "was in progress." (*Id.* ¶¶ 60-61.) She alleges that she contacted Epiq as well, and Epiq refused to consider her for redress funds for the same reason it refused to do so

5

the first time. (*Id.* ¶ 62.) The CFPB allegedly closed the Green Tree redress fund on March 31, 2019. (*Id.* ¶ 86.)

### D.     LeMaster's Prior Federal Lawsuit

On November 14, 2017, LeMaster sued the CFPB, Ditech Financial LLC (f/k/a Green Tree), and the Federal National Mortgage Association, alleging that the CFPB "breached its fiduciary duty" to her under the Consent Order in several ways. (*See* Compl. [Doc. No. 1] ¶¶ 108-13, *LeMaster v. Ditech Fin. LLC*, No. 17-cv-05101 (JRT/DTS) (D. Minn.).) On August 3, 2018, Chief Judge Tunheim dismissed LeMaster's claims against the CFPB for lack of subject matter jurisdiction based on standing. *See LeMaster v. Ditech Fin. LLC*, No. 17-cv-5101 (JRT/DTS), 2018 WL 3696605, at *2 (D. Minn. Aug. 3, 2018). Specifically, the court found that there was "nothing in the Consent Order that amounts to a stipulation—explicit or otherwise—by the government permitting third-party enforcement of the Consent Order," and consequently, LeMaster lacked standing, requiring dismissal of her claims to enforce the Consent Order. *Id.* On November 1, 2019, the Eighth Circuit affirmed the district court's ruling as to the CFPB. *See LeMaster v. Ditech Fin. LLC*, 782 F. App'x 519 (8th Cir. 2019) (per curiam) (unpublished).[2]

---

[2] The Court also notes that LeMaster was a party to several state court lawsuits related to the foreclosure on her home. *See LeMaster v. Green Tree Servicing, LLC*, No. A19-0406, 2019 WL 5884569 (Minn. Ct. App. Nov. 12, 2019) (unpublished) (upholding district court's release of escrowed funds), *rev. denied* (Minn. Jan. 29, 2020); *Fed. Nat'l Mortg. Ass'n v. LeMaster*, No. A16-1962, 2017 WL 2920288 (Minn. Ct. App. July 10, 2017) (unpublished) (upholding summary judgment for Fannie Mae in eviction action), *rev. denied* (Minn. Sept. 27, 2017); *LeMaster v. Green Tree Servicing, LLC*, No. A15-0552, 2015 WL 9437640 (Minn. Ct. App. Dec. 28, 2015) (unpublished) (upholding summary judgment for Green Tree regarding the foreclosure ), *rev. denied* (Minn. Mar. 15, 2016).

## II. PROCEDURAL HISTORY

On February 26, 2020, LeMaster filed this FTCA action against the United States, alleging a "breach of fiduciary duty in tort related to the [CFPB's] failed compliance with its obligations" under the Consent Order. (Compl. ¶ 1.)[3] Specifically, she alleges that the CFPB knew that Green Tree serviced her mortgage during the relevant time period but refused "to allow [her the] opportunity to apply for the redress funds." (*Id.* ¶¶ 82-85, 104.) She alleges that the CFPB was required to monitor Green Tree's compliance with the terms of the Consent Order, but that it failed to do so, as evidenced by her formal complaints and "thousands" of others. (*Id.* ¶¶ 64-71, 105.) She also alleges that the CFPB failed to ensure that all relevant consumers received redress funds, failed to properly investigate formal complaints, and failed to investigate whether Green Tree provided the CFPB with a complete list of consumers that it serviced during the qualifying period. (*Id.* ¶¶ 105-07.)[4]

## III. DISCUSSION

The United States contends that LeMaster's Complaint should be dismissed for three reasons: (1) sovereign immunity bars this action under Rule 12(b)(1) because the discretionary function exception to the FTCA's waiver of sovereign immunity applies,

---

[3] LeMaster alleges that she exhausted her administrative remedies because she filed a Standard Form 95 with the CFPB and received a notice of final denial of her administrative claim from the CFPB, thereby satisfying 28 U.S.C. § 2675. (*See id.* ¶¶ 4, 6.)

[4] Also on February 26, 2020, LeMaster filed a complaint against the United States in the U.S. Court of Federal Claims containing similar allegations as in this action, but alleging that the United States violated its fiduciary duties under the Tucker Act and the Dodd-Frank Wall Street Reform and Consumer Protection Act, rather than the FTCA. (*See* Bildtsen Decl. [Doc. No. 13] Ex. 1.)

depriving the Court of subject matter jurisdiction; (2) issue preclusion bars this action under Rule 12(b)(6) because LeMaster has already litigated—and lost—the central issue she raises in the Complaint (*i.e.*, whether the CFPB properly enforced the Consent Order); and (3) LeMaster fails to state a claim that she is entitled to relief under the Consent Order under Rule 12(b)(6) because its terms do not encompass her.

LeMaster opposes the United States' motion on all grounds, and, in the alternative, moves the Court to transfer this case under 28 U.S.C. § 1631 to the U.S. Court of Federal Claims.

### A. Standard of Review

Where the defendant argues that the facts alleged in the complaint fail to establish subject matter jurisdiction under Rule 12(b)(1)—as the United States does here—the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The Court's review is limited to the face of the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal

conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.[5]

### B. The FTCA's Waiver of Sovereign Immunity and the Discretionary Function Exception

Absent a waiver, sovereign immunity protects the United States and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). An example of such a waiver resides in the FTCA, which, as a general matter, allows for civil liability against the United States in certain tort suits. Specifically, the FTCA provides that: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances," but shall not be liable for prejudgment interest nor punitive damages. 28 U.S.C. § 2674. Further, the FTCA grants this Court jurisdiction over:

> civil actions on claims against the United States, for money damages, … for injury or loss of property, or personal injury or death caused by the negligent

---

[5] Although LeMaster is pro se, she is a licensed attorney in Minnesota. As a result, the Court declines to hold her to a less stringent pleading standard or liberally construe the Complaint, beyond what Rule 12 otherwise requires. *See Ming'ate v. Bank of Am., N.A.*, No. CIV. 11-1787 (ADM/TNL), 2011 U.S. Dist. LEXIS 114026, at *4 n.2 (D. Minn. Sept. 30, 2011) ("Typically, pro se complaints are to be liberally construed, and held to less stringent standards than formal pleadings drafted by lawyers. Given this rationale for applying a less strict standard to pro se laypersons, courts have declined to extend less stringent standards and liberal construction to pro se attorneys." (citations and internal quotation marks omitted)). The Court notes that LeMaster does not ask the Court to treat her Complaint as one filed by a pro se layperson.

or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* § 1346(b)(1).

The FTCA, however, contains a number of exceptions to its waiver of sovereign immunity. *See id.* § 2680. Here, only one exception is at issue: the discretionary function exception. Under this exception, courts may not hold the United States liable for "[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a). Congress enacted the discretionary function exception to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984). If the discretionary function exception applies, "it is a jurisdictional bar to suit." *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013); *accord Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006) (if an exception under § 2680 applies, "the bar of sovereign immunity remains").

A two-step test governs whether the discretionary function exception bars a suit under the FTCA. *See United States v. Gaubert*, 499 U.S. 315, 328 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). First, the Court asks "whether the challenged conduct or omission is truly discretionary, that is, whether it involves an element of judgment or choice instead of being controlled by mandatory statutes or regulations."

*Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019) (citations and internal quotation marks omitted). "If a federal statute, regulation, or policy mandates a particular action, the discretionary function exception will not apply." *Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018) (citation omitted). "If, on the other hand, no mandate exists, the action is considered a product of judgment or choice and the first step is satisfied." *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 673 (8th Cir. 2008) (citation omitted).

Second, if the challenged action is discretionary, the Court asks "whether the government employee's judgment or choice was based on considerations of social, economic, and political policy." *Buckler*, 919 F.3d at 1045 (citations and internal quotation marks omitted). Crucially, "as long as a discretionary decision is susceptible to policy analysis, the exception applies whether or not [a] defendant in fact engaged in conscious policy-balancing." *Herden*, 726 F.3d at 1046 (citations omitted). Further, if there is discretion, a presumption arises that the discretion is based on policy considerations, and the plaintiff "must rebut this presumption." *Id.* at 1048 (citation omitted).

The Court first considers whether the challenged conduct is "truly discretionary." According to the United States, the CFPB's implementation of the Consent Order is discretionary because there is no mandate—federal statute, regulation, or otherwise—requiring the CFPB to administer the Consent Order in any of the ways she requests. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Doc. No. 21] at 10-15.) In response, LeMaster contends that the CFPB's distribution of the redress funds to the relevant persons

11

was not discretionary because it had a duty of "due care" to ensure that such persons received the redress funds. (Pl.'s Opp'n at 21-24.)

The United States points the Court to *Hartje v. Federal Trade Comm'n.*, 106 F.3d. 1406 (8th Cir. 1997). There, the FTC brought a civil enforcement action against a rare coins business, resulting in a consent order. *Id.* at 1407. Subsequently, the court appointed a receiver, whom the court instructed to oversee the return of the coins to their owners. *Id.* The Hartjes, contending that they did not receive their coins, sought the coins through litigation, first through an unsuccessful attempt to intervene in the enforcement action, then through an unsuccessful suit against the receiver, and finally through an FTCA suit against the United States, the FTC, and the FTC attorney overseeing the enforcement action. *Id.* at 1407-08.

The district court dismissed the action against the FTC attorney under the discretionary function exception, and the Eighth Circuit affirmed, agreeing that he "was performing a discretionary function while conducting the FTC enforcement action in his position as FTC Counsel," which "encompassed [his] actions in advising the receiver as to specific ownership claims." *Id.* at 1408. The Eighth Circuit agreed with the district court that making "judgments and recommendations about potential … customer claims was within [his] role as FTC Counsel," and "[t]he possibility that [his] recommendations to the receiver were mistaken … does [not] remove them from the discretionary function exception." *Id.*

Similar to *Hartje*, the Court finds that the CFPB's enforcement activities that LeMaster challenges were discretionary. LeMaster has identified no mandate requiring the

CFPB to act according to any particular protocol. The Consent Order authorizes, but does not require, the CFPB to monitor Green Tree's compliance with the Consent Order in certain ways. (*See* Compl., Ex. 2 §§ XV, XX, at 94, 105-06.) Further, the Consent Order grants the CFPB discretion in administering the redress funds: "If the [CFPB], in consultation with the [FTC], decides that redress to consumers is wholly or partially impracticable or otherwise inappropriate … , the [CFPB] may apply any remaining money for such other relief … as it determines to be reasonably related to" Green Tree's allegedly unlawful practices. Indeed, rather than mandating redress to certain persons, this provision expressly allows the CFPB to consult with the FTC and judge whether providing redress to consumers is "wholly or partially impracticable or otherwise inappropriate."

Likewise, the CFPB's investigations into complaints, such as LeMaster's, include elements of judgment and discretion. *See Benigni v. United States*, No. 97-3181, 1998 U.S. App. LEXIS 7208 (8th Cir. 1998) (per curiam) (unpublished). Even if the CFPB made a mistake—or otherwise abused its discretion—by not considering her for redress funds, such a mistake would not give rise to a cause of action under the FTCA. *See Hartje*, 106 F.3d. at 1408. Notably, LeMaster even concedes that, "[u]nlike the guidance provided [in the Dodd-Frank Act] for the standard of care for handling the civil money penalty funds, the statute fails to provide parameters for the handling of the fiduciary redress funds." (*See* Pl.'s Opp'n at 6.)

LeMaster nonetheless argues that the CFPB must show that it exercised "due care" for the discretionary function exception to apply. (*See* Pl.'s Opp'n at 23-27.) This argument

13

is unavailing. Section 2680(a), in full, provides that there will be no liability under the FTCA for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This Section contains two separate exceptions to the FTCA's waiver of sovereign immunity that are separated by a disjunctive "or" immediately after the word "valid." *See Lively v. United States*, 870 F.2d 296, 297 (5th Cir. 1989). The exception preceding the disjunctive "or" requires "due care," while the latter (*i.e.*, the discretionary function exception) does not. Indeed, if the discretionary function exception applies, it "applies regardless of whether the government employee abuses that discretion." *Buckler*, 919 F.3d at 1045 (citing 28 U.S.C. § 2680(a)). Therefore, because the CFPB was "not bound to act in a particular way," *Gaubert*, 499 U.S. at 329, the CFPB's conduct that LeMaster challenges involved "element[s] of judgment or choice," satisfying the first step of the analysis.

Next, because the Court finds that the challenged conduct is discretionary, the Court considers whether the CFPB's judgments or choices were "susceptible to policy analysis." The United States contends that the CFPB's decisions with respect to administering the Consent Order are susceptible to policy analysis because determining how to monitor compliance with the Consent Order, considering whether to take action with respect to the Consent Order, and deciding whether a person falls within the rubric of the Consent Order

14

are all decisions subject to the CFPB's prioritization, resources, and policies and require the CFPB to weigh competing policy interests. (Def.'s Mem. at 15-16.)

In response, LeMaster contends that the CFPB's solicitation of applications for redress funds and refusal to allow someone, who claims an interest in the funds, an opportunity to provide proof of eligibility are not susceptible to policy analysis. (Pl.'s Opp'n at 27-29.) This is so, LeMaster contends, because the fiduciary relationship between her and the CFPB is a private relationship that cannot be driven by policy, and the CFPB's refusal to let her apply for redress funds cannot be reconciled with fiduciary principles and its policy that funds "can only go to the victims." (*Id.* at 28-29.)

The Court disagrees. Here, any judgment as to whether the CFPB should take action under the Consent Order, including a judgment as to how to monitor Green Tree's compliance, and any judgment regarding the payment of redress funds thereunder are susceptible to policy considerations. *See Hartje*, 106 F.3d at 1408; 12 C.F.R. § 1080.3 (requiring the CFPB to act "only in the public interest" and to "not initiate an investigation or take other enforcement action" when the alleged violation is a private controversy and does not harm the public interest). Indeed, for example, the CFPB may balance its policy goals alongside its available resources in reaching such decisions.[6]

---

[6] The Court further notes that the parties debate whether there is a private analogue cause of action to LeMaster's claim that is sufficient to bring her claim within the scope of the FTCA. *See* 28 U.S.C. § 1346(b)(1) (providing that the United States can only be liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred"). However, the Court need not address whether a private analogue exists here because, as explained above, the discretionary function exception deprives the Court of subject matter

For these reasons, the Court does not have subject matter jurisdiction over LeMaster's FTCA claim, and therefore grants the United States' Motion to Dismiss.[7]

## IV.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 10] is **GRANTED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 22, 2021                              s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge

---

jurisdiction. *See Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 606 (8th Cir. 2016).

[7] In light of the Court's finding that it does not have subject matter jurisdiction over this matter, it does not reach the remaining issues raised by the United States, including whether issue preclusion bars this action and whether LeMaster otherwise fails to state a claim. Nor is transfer under 28 U.S.C. § 1631 to the Court of Federal Claims appropriate. A court may only transfer an action if the action could have been brought in that court at the time it was filed. Here, the Court of Federal Claims also lacks subject matter jurisdiction over LeMaster's FTCA claim for the very reasons discussed above.